**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JUAN ESCUDERO,**

    **Petitioner,**

v.                                                                        **Case No.: 8:20-cv-1128-T-27AAS**
                                                                        **Criminal Case No.: 8:16-cr-505-T-27AAS**

**UNITED STATES OF AMERICA,**

    **Respondent.**
_____/

## ORDER

**BEFORE THE COURT** are Petitioner Escudero's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (cv Dkt. 4), and the United States' Response (cv Dkt. 5). Upon review, Escudero's Amended § 2255 Motion is **DENIED**.

## BACKGROUND

In 2016, Escudero was indicted and charged with conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine and 500 grams or more of cocaine, in violation of 21 U.S.C. § 846 (Count One), and distribution and possession with intent to distribute 500 grams or more of methamphetamine and 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(ii), and 18 U.S.C. § 2 (Count Two). (cr Dkt. 1). A jury found him guilty on both counts. (cr Dkt. 81). As detailed in the presentence investigation report (PSR),[1] Escudero was a member of a drug trafficking organization that shipped

---

[1] Escudero objected to the PSR's factual basis, contending that he "did what he did because of entrapment by law enforcement and/or duress by drug dealers." (cr Dkt. 89 at p. 43). However, he did not raise any specific objection to the facts in the PSR and did not "necessarily disagree with what the facts state or stated." (cr Dkt. 106 at 4). As noted by the U.S. Probation Office, the facts were supported by evidence presented at trial (cr Dkt. 89 at 36),

1

methamphetamine and cocaine to confidential sources in the Tampa Bay area, directed the sources to make deposits into various bank accounts, and arranged for a money courier to travel to Florida to collect a payment. (cr Dkt. 89 ¶¶ 6-9). Escudero also met with confidential sources and negotiated several narcotics transactions. (Id. ¶¶ 11-40). He was arrested when he arrived at a location to receive payment for a methamphetamine transaction. (Id. ¶ 41).

The PSR determined that Escudero was accountable for 16.5 kilograms of cocaine and 48 kilograms of methamphetamine. (Id. ¶ 48). The PSR further applied a three-level enhancement for Escudero being a manager or supervisor of the organization. (Id. ¶ 51). With a total offense level 41 and criminal history category I, his guidelines range was 324 to 405 months, and he faced a statutory minimum sentence of 10 years and up to life in prison. (Id. ¶¶ 56, 61, 103-04). Defense counsel objected to the PSR's factual basis, Escudero's base offense level, the role enhancement, and the absence of a reduction for acceptance of responsibility. (Id. at pp. 36-38, 43). At sentencing, counsel's objections were overruled. (cr Dkt. 106 at 5-9). After considering the § 3553(a) factors, this court varied downward and sentenced Escudero to concurrent terms of 240 months imprisonment on Counts One and Two, followed by five years supervised release. (Id. at 18-20); (cr Dkt. 96).

On direct appeal, Escudero challenged (1) the denial of his motion for judgment of acquittal, since the evidence presented at trial was purportedly insufficient to overcome his defenses of entrapment and duress; (2) the manager or supervisor role enhancement; and (3) the lack of a reduction for acceptance of responsibility. (cr Dkts. 98, 110); *United States v. Escudero*,

---

and Escudero's objection was overruled based on the jury verdict which rejected his entrapment and duress defenses. (cr Dkt. 106 at 5).

761 F. App'x 949, 950 (11th Cir. 2019). In affirming his convictions and sentence, the Eleventh Circuit first noted that

> sufficient evidence was presented to negate Escudero's affirmative defense of entrapment. There was ample evidence of predisposition—e.g. phone calls and text messages relating to the Tampa deal—providing evidence that Escudero was a seasoned drug dealer. Additionally, the jury was free to disbelieve Escudero's testimony that he was not a drug dealer, and that he had only agreed to participate in a Tampa drug deal—which he testified was his first ever drug deal—because he wanted to further his dream of transporting watermelons . . . .
>
> Ample evidence was also presented to negate Escudero's affirmative defense of duress. Moreover, the jury was free to disbelieve Escudero's testimony as to the threats he received, and to conclude that the opposite of what he said was true.

*Escudero*, 761 F. App'x at 952. As to the role enhancement, the Eleventh Circuit found that

> the government offered sufficient evidence to demonstrate that he was a manager or supervisor of the scheme for which he was convicted. That evidence included, among other things, the phone calls and text messages regarding the Tampa drug deal, which showed that Escudero managed and controlled the money courier, or in Escudero's own words, his 'guy.'

*Id.* at 953. Last, in finding no clear error in not granting a reduction for acceptance of responsibility, the Eleventh Circuit noted that Escudero did not "go to trial to preserve a constitutional challenge or raise an issue that did not relate to his factual guilt," and that "in claiming that his criminal conduct was the product of government entrapment and duress, Escudero placed responsibility for his crimes on others, and it was not until he was allowed to allocate at sentencing that he truly expressed remorse for his actions." *Id.* at 954.

Escudero raised one claim in his initial § 2255 motion, contending that defense counsel "was ineffective when she failed to produce key witness[es] who could validate [his] testimony. She was also deficient when she failed to produce evidence to show that [he] gad [sic] any indicia

3

of any history of leadership activity, past or present." (cv Dkt. 1 at 5). He further asserted that his motion "will be amended once Coleman Prison Complex resumes normal operations." (Id.). He filed an amended motion in which he contends counsel was ineffective in failing to (1) investigate and call witnesses that could have benefited Escudero's defense; (2) present evidence to show that he was not "organizing and controlling any part of the drug buy/sell activity"; and (3) fully explain the "measure and meaning of guilt" and the benefits he would lose by going to trial. (cr Dkt. 4 at 4-6). The United States correctly contends that his claims are without merit.[2] (cv Dkt. 5).

## STANDARD

To establish ineffective assistance of counsel, Escudero must demonstrate that (1) counsel's performance was constitutionally deficient, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. And "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation and internal quotation marks omitted).

---

[2] Although Escudero was permitted to file a reply, he has not done so, and the time to do so has expired. (cv Dkt. 3 at 2). An evidentiary hearing is not required because the § 2255 motion "and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b).

4

## DISCUSSION

Absent deficient performance and prejudice resulting from the alleged deficient performance, Escudero's ineffective assistance of counsel claims fail.

*Ground One: Failure to Investigate and Present Witnesses*

In Ground One, Escudero contends counsel was ineffective in failing to "thoroughly investigate the pertinent facts in order to bring credible and useful witnesses to testify at trial on behalf of [him]." (cv Dkt. 4 at 4). He explains that

> [t]wo key Georgia witnesses were not interviewed in preparation for trial. Both could have brought credibility to Mr. Escudero's facts and likely would have persuaded the jury that he was not directly involved in the initial drug transaction. At the request of a friend living in Georgia, Mr. Escudero provided the contact information of an acquaintance he knew in Texas who was a known drug dealer. The purported buyer (a CS), living in Florida, made direct contact with the supplier and the two of them came to an arrangement that did not involve Mr. Escudero.

(Id.). His contentions are without merit.

First, Escudero's vague assertions do not establish that counsel's performance was deficient. He neither identifies the "key Georgia witnesses," nor provides supporting affidavits from them or sufficient detail as to their potential testimony. *See Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) ("[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof."); *see also Mazzola v. Sec'y, Dep't of Corr.*, No. 8:12-CV-1328-T-36JSS, 2015 WL 5772279, at *13 (M.D. Fla. Sept. 30, 2015) (collecting cases in finding that petitioner failed to "present any evidence to support his contention that [a potential witness] would have testified at trial as he theorizes"). Further, he does not allege that he advised counsel about the witnesses or how counsel would have discovered them during a more thorough investigation.

5

Even assuming counsel was aware of the two individuals, an attorney's failure to call witnesses that a defendant thinks may be helpful generally does not constitute ineffective assistance.[3] *See Hardwick v. Crosby*, 320 F.3d 1127, 1161 (11th Cir. 2003); *see also Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision . . . ."). Indeed, although Escudero asserts he was not "directly involved in the initial drug transaction," he admits to providing the contact information of a "known drug dealer" and that an "arrangement" was made to purchase drugs. (cv Dkt. 4 at 4). It would have been reasonable for an attorney to determine that such testimony would not have been helpful to Escudero's defense. Additionally, even without the purported witnesses' testimony, Escudero was able to advance his entrapment and duress defenses at trial and testify as to threats against him and his family. (cr Dkt. 104 at 115-31). Notwithstanding, Escudero admitted that he committed the crimes "freely and voluntarily" and of his "own free will" to maintain a friendship, and the jury rejected his defenses. (Id. at 128-29).

Accordingly, in light of the evidence presented at trial, including Escudero's admission of involvement in the crimes, he fails to establish prejudice resulting from the alleged deficient performance. *United States v. Hatcher*, 541 F. App'x 951, 953 (11th Cir. 2013) ("[E]ven assuming

---

[3] As for the alleged failure to investigate, the Supreme Court has explained,

> Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003).

that defense counsel's performance was deficient, [the defendant] cannot demonstrate prejudice in light of the overwhelming evidence of guilt presented at trial."). In summary, absent deficient performance and prejudice, this ineffective assistance of counsel claim is due to be denied.

*Ground Two: Failure to Present Evidence of Minimal Role in Offense*

In Ground Two, Escudero contends that counsel was ineffective in failing "to establish that [he] was not organizing and controlling any part of the drug buy/sell activity." (cv Dkt. 4 at 5). He explains that he

> only became involved because the seller/shipper of the drugs in Texas threatened physical harm to [him] and his family when he was not paid.
>
> Only after dozens of harassing phone calls and threats against his family did [he] wake up and realize that he had no alternative but to attempt to collect money from the buyer in Florida. The purported buyer (a paid CS, working for the DEA) decided not to pay for the drugs that he bargained for. He knew this would work to get the un-savvy Mr. Escudero involved in the transaction (entrapment).
>
> Even then, Mr. Escudero, who has no U.S. bank accounts, had to use two bank accounts (his wife's and a relative's) to receive funds to pay the drug dealer. He received less than half of the money he needed and eventually had to find a way to earn the remainder of the funds to protect his family from harm, which he did.
>
> Defense counsel should have investigated phone records, drug shipments and created a timeline of events to produce evidence that Mr. Escudero had a minor or minimal role in the one-time drug transaction. He was unaware of the details of the transaction until his 'friendly' referral failed to pay for the drugs.

(Id.). These contentions are without merit.

Under U.S.S.G. §3B1.1(b), a defendant's offense level is increased by three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive. . . ." Here, counsel's objection to

7

the enhancement was overruled since the offense involved five or more participants and there was evidence Escudero exercised authority, direction, and supervision over the courier, "at least participated to some degree in the planning and organizing of the deliveries and recovery of drug proceeds," and was aware of the conspiratorial activity. (cr Dkt. 106 at 5-8). The Eleventh Circuit affirmed, noting that

> the government offered sufficient evidence to demonstrate that he was a manager or supervisor of the scheme for which he was convicted. That evidence included, among other things, the phone calls and text messages regarding the Tampa drug deal, which showed that Escudero managed and controlled the money courier, or in Escudero's own words, his "guy."

*Escudero*, 761 F. App'x at 953 (citations omitted).

Escudero does not explain how an investigation into "phone records, drug shipments" and the creation of a "timeline of events" would have affected the result at sentencing or trial, especially since he was able to present his entrapment and duress defenses. And he cites no authority supporting his contention that counsel was ineffective in failing to investigate facts relevant to the application of a guidelines enhancement. In short, absent deficient performance and resulting prejudice, this claim of ineffective assistance of counsel is due to be denied.

### *Ground Three: Failure to Explain the Benefits of Pleading Guilty*

In Ground Three, Escudero contends that counsel was ineffective "when she failed to convey fully to [him] the meaning and measure of guilt in a federal charge of conspiracy to sell illegal drugs and the benefits he would lose if he went to trial." (cv Dkt. 4 at 6). He explains that

> [he] was completely aware of the evidence that he collected money from a DEA CS drug buyer and that he gave that money to the drug seller to save his life and the lives of family members. There was no avoiding the evidence. By going to trial, he gave up the safety valve feature of a first time offender who pleads guilty. He could have also gained a lower sentence by accepting responsibility for his part in the crime if he had not gone to trial.

8

> Defense Counsel did not convey to [him] that he would be fighting his guilt and proclaiming his innocence if he went to trial; that there was no way to fight the errors in the leadership charges and a group of five or more by themselves. He had no idea how much he was going to lose if or when he lost at trial. Cooperation, he knew, would cost many lives.
>
> [He] did not understand that he could plead guilty and decline to cooperate for fear of reprisal. He needs to be returned to the status quo ante in order to proceed as a fully informed defendant.

(Id.).[4]

Essentially, having been convicted, he bemoans in hindsight his decision to exercise his constitutional right to trial and blames his attorney for that decision. His contention is not only without merit but disingenuous. *See Falgout v. United States*, No. 6:07-CR-157-RDP-RRA, 2013 WL 3712336, at *6 (N.D. Ala. July 12, 2013) ("A Section 2255 action is not designed to account for buyer's remorse. But that is all that is at issue here.").

---

[4] Contrary to the United States' contention, this claim appears to be untimely. (cv Dkt. 5 at 5). Escudero's judgment of conviction became final on May 13, 2019, when the period to seek certiorari expired. *See Kaufmann v. United States*, 282 F.3d 1336, 1338 (11th Cir. 2002). Although he filed his initial motion on May 9, 2020, within one year of May 13, 2019, he raised only one claim:

> Defense Counsel was ineffective when she failed to produce key witness(es) who could validate Mr. Escudero's testimony. She was also deficient when she failed to produce evidence to show that Mr. Escudero gad [sic] any indicia of any history of leadership activity, past or present.

(cv Dkt. 1 at 5). Missing is any claim or factual allegation relating to counsel's purported failure to explain the risk of trial or benefits of a plea agreement, or Escudero's decision to maintain his plea of not guilty. These contentions, which do not arise from the same set of facts as his original claims, were first raised in his amended motion, filed well after the one-year limitations period expired. *See Pruitt v. United States*, 274 F.3d 1315, 1319 (11th Cir. 2001) ("[I]n order to relate back, the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.' . . . The same analysis applies whether a district court denies leave to amend because the claims asserted by the petition to amend are untimely, or whether the district court allows the amendment and dismisses the claims as being barred by the limitations period."); *see also Beeman v. United States*, 871 F.3d 1215, 1219 (11th Cir. 2017) (citations omitted) (noting that the § 2255(f) statute of limitations "requires a claim-by-claim approach to determine timeliness").

Escudero does not contend that the limitations period started after his judgment of conviction became final under § 2255(f), or address any basis to consider his otherwise untimely claim, such as equitable tolling. However, because the claim is in any event without merit, it is unnecessary to conduct an evidentiary hearing on the matter.

9

First, Escudero has not shown that counsel's performance was deficient. The record belies his contention that counsel failed to discuss with him the possibility of a guilty plea. Prior to trial, counsel requested a competency determination to ensure that Escudero was able to understand the "allegations against him, the court process . . . , or his options as far as proceeding to trial versus entering a guilty plea." (cr Dkt. 24 at 1). That motion was granted and following a competency evaluation and hearing, Escudero was found competent. (cr Dkts. 26, 31, 34). Moreover, a continuance had been granted on counsel's request to allow, in part, "further time to advise Mr. Escudero regarding his options and the possibility of a plea." (cr Dkt. 58); (cr Dkt. 62 at 3); (cr Dkt. 63). And on the first day of trial, the United States advised that Escudero had rejected the plea agreement offered by the United States. (cr Dkt. 103 at 9).

In sum, the record confirms that Escudero was advised of his option to plead guilty and belies his claim that counsel "did not convey to [him] that he would be fighting his guilt and proclaiming his innocence if he went to trial." (cv Dkt. 4 at 6); *cf. Diaz v. United States*, 930 F.2d 832, 834-35 (11th Cir. 1991) (finding that defendant's awareness of offered plea agreement contradicted claim that he was denied an opportunity to reject the offer). And he admits that he was "completely aware of the evidence that he collected money from a DEA CS drug buyer and that he gave that money to the drug seller . . . . There was no avoiding the evidence." (Id.). Notwithstanding, he rejected the plea agreement and proceeded to trial. Under these circumstances, counsel cannot be faulted when a client elects to exercise his constitutional right to a jury trial.

To the extent he contends that counsel did not explain the possibility of a guidelines enhancement, since "there was no way to fight the errors in the leadership charges and a group of five or more by themselves," the contention does not demonstrate deficient performance or

10

resulting prejudice, considering Escudero's decision to reject the plea agreement and proceed to trial. Indeed, he does not explain why the role enhancement would not have applied if he pleaded guilty. And he cites no authority supporting his contention that counsel was ineffective in failing to discuss possible guidelines enhancements prior to trial. *See Thomas v. United States*, 27 F.3d 321, 325 (8th Cir. 1994) (finding that counsel's failure to advise defendant of possible enhancement did not constitute ineffective assistance); *see also Barker v. United States,* 7 F.3d 629, 633 (7th Cir. 1993) ("Misinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel.").

Finally, Escudero has not shown "a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial.'"[5] *Pericles v. United States*, 567 F. App'x. 776, 782 (11th Cir. 2014). First, he does not expressly contend that, had counsel informed him of the risks of trial and the benefits of pleading guilty, he would have pleaded guilty, or even that he would plead guilty if "returned to the status quo ante in order to proceed as a fully informed defendant." (cv Dkt. 4 at 6); *see Diaz*, 930 F.2d at 835 (finding no ineffective assistance where petitioner did "not allege that but for his attorney's errors, he would have accepted the plea offer" and cites "no evidence to indicate that prior to his conviction he expressed any desire to plead guilty").

Second, he maintains that he committed the crimes due to entrapment and duress and that

---

[5] Similarly, to the extent Escudero contends that counsel failed to advise him of the option to plead guilty without benefit of a plea agreement, he has not shown a reasonable probability that he would have "pled guilty 'straight up.'" *See Kasper v. United States*, No. 3:13-cr-60-J-32PDB, 2018 WL 501557, at *5-6 (M.D. Fla. Jan. 22, 2018) (citing *Taylor v. United States*, No. 16-12138-K, 2017 WL 5202358, at *3 (11th Cir. Aug. 18, 2017)).

he was not "directly involved" in certain drug transactions. *See* (cv Dkt. 4 at 4-5). As noted by the Eleventh Circuit, "in claiming that his criminal conduct was the product of government entrapment and duress, Escudero placed responsibility for his crimes on others . . . ." *Escudero*, 761 F. App'x at 954. And a petitioner's insistence that he is innocent and his refusal to accept responsibility contradicts a claim that he would have pleaded guilty absent deficient performance on the part of counsel. *Rosin v. United States*, 786 F.3d 873, 878-79 (11th Cir. 2015); *see also Pericles*, 567 F. App'x at 782.

Last, Escudero's contentions as to the possibility of the application of "the safety valve feature of a first time offender who pleads guilty" and a "lower sentence by accepting responsibility for his part in the crime" are, at best, speculative. (cv Dkt. 4 at 6). As the United States observes, even if Escudero had pleaded guilty, he was not entitled to "safety-valve" relief. (cv Dkt. 5 at 15-16). Under the safety valve, a defendant can be sentenced under the guidelines "without regard to any statutory minimum sentence" if he is convicted under 21 U.S.C. §§ 841 or 846 and satisfies five criteria, including that he was not an "organizer, leader, manager, or supervisor of others in the offense," and that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." U.S.S.G. §5C1.2; 18 U.S.C. § 3553(f)(4) and (5).

Escudero faced statutory minimum terms of ten years on Counts One and Two. (cr Dkt. 89 ¶ 103). His guidelines range, however, was 324 to 405 months. (Id. ¶ 104). Moreover, since he was an "organizer, leader, manager, or supervisor of others in the offense" and did not provide the United States with all relevant information, he did not satisfy the criteria for safety valve. *See*

12

*United States v. Burgos-Vasquez*, 784 F. App'x 663, 668 (11th Cir. 2019) (finding no clear error in denial of safety-valve reduction where defendant refused to provide relevant information). And even if he had pleaded guilty, his reluctance to cooperate could have affected the possibility of a sentence reduction for acceptance of responsibility. *See United States v. Cobbs*, 155 F. App'x 430, 433 (11th Cir. 2005) (affirming denial of reduction notwithstanding guilty plea). As the Eleventh Circuit found in affirming the denial of a reduction, "in claiming that his criminal conduct was the product of government entrapment and duress, Escudero placed responsibility for his crimes on others, and it was not until he was allowed to allocate at sentencing that he truly expressed remorse for his actions." *Escudero*, 761 F. App'x at 954. As noted, Escudero persists in claiming that his conduct resulted from government entrapment and duress, which undermines any contention that he would have received a reduction for acceptance of responsibility.

In summary, absent deficient performance and prejudice resulting from the alleged deficient performance, this ineffective assistance of counsel claim is due to be denied.

### *Certificate of Appealability ("COA")*

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," which requires Escudero to demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); 28 U.S.C. § 2253(c)(2). I find that jurists of reason could not disagree with the resolution of Escudero's constitutional claims or conclude that the issues presented are adequate to deserve encouragement to proceed further. Because he has not met the required standard, he is not entitled to a COA and cannot appeal *in forma pauperis*.

## CONCLUSION

Petitioner Escudero's Amended § 2255 motion is **DENIED**. (cv Dkt. 4). The Clerk is directed to enter judgment in favor of the United States and against Escudero, terminate any pending motions, and close the case.

**DONE AND ORDERED** this 13th day of October, 2020.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Petitioner, Counsel of Record